**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MICHAEL LEON HALL,

    Petitioner,

v.    Case No. 3:16-cv-951-J-39JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

    Respondents.

## ORDER

**I.    Status**

Petitioner Michael Leon Hall, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1, Petition) on July 21, 2016.[1] Petitioner filed an Amended Petition on October 28, 2016.[2] See Doc. 7. Petitioner challenges a 2006 state court (Flagler County, Florida) judgment and sentence. Doc. 7 at 1.

Respondents assert that the Petition is untimely filed and request dismissal of this case with prejudice. See Response to Petition (Doc. 13) (Resp.; Resp. Ex.). Petitioner

---

[1] The Petition does not contain a prison stamp; thus, the Court acknowledges the filing date as the date affixed to the oath certifying the Petition was placed in the prison mailing system on July 21, 2016. Doc. 1 at 25.

[2] Petitioner's Second Amended Petition (Doc. 12) was stricken from the record on April 4, 2017 (Doc. 17).

filed a Reply on May 22, 2017. See Petitioner's Reply to Respondents['] Response to Writ of Habeas Corpus/Motion to Dismiss (Doc. 18) (Reply). This case is ripe for review.

**II.     Timeliness**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

2

28 U.S.C. § 2244(d).

## III. Analysis

On April 19, 2006, a jury found Petitioner guilty of carjacking, kidnapping, and fleeing or attempting to elude a law enforcement officer. Resp. Ex. 7. On April 20, 2006, the trial court sentenced Petitioner to incarceration for a term of thirty years as to the carjacking and kidnapping convictions, and a five-year term of incarceration as to the fleeing or attempting to elude a law enforcement officer conviction. Resp. Ex. 10. On January 16, 2007, the Fifth District Court of Appeal (Fifth DCA) per curiam affirmed Petitioner's judgment and sentences without a written opinion. Resp. Ex. 16. Petitioner's convictions and sentences became final ninety days later on April 16, 2007. See Clay v. United States, 537 U.S. 522 (2003); Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion." (citing Supreme Court Rule 13.3)). As such, the AEDPA one-year limitations period began to run on April 17, 2007.

On October 3, 2007, 169 days into the limitations period, Petitioner filed his first motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. 19. Petitioner filed a supplemental Rule 3.850 motion on December 5, 2007.

3

Resp. Ex. 20. The trial court denied Petitioner's Rule 3.850 motions on March 10, 2009.[3] See State v. Hall, 2005 CF 000231 (Fla. 7th Cir. Ct.). Petitioner appealed the denial. Resp. Ex. 24. The Fifth DCA issued its mandate affirming the trial court's denial of Petitioner's Rule 3.850 motions on September 29, 2009. Resp. Exs. 26; 29.

On August 17, 2009, while Petitioner's appeal was pending, however, Petitioner filed a state petition for writ of habeas corpus with the Fifth DCA, alleging ineffective assistance of appellate counsel. Resp. Ex. 30. The Fifth DCA dismissed Petitioner's untimely habeas petition for lack of jurisdiction on October 13, 2009, and denied Petitioner's motion for rehearing on November 16, 2009. Resp. Exs. 32; 34. Because the Fifth DCA dismissed the state habeas petition as untimely, it was not a properly filed motion for purposes of tolling Petitioner's federal one-year statute of limitations. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005) (a postconviction motion found to be untimely filed is not properly filed and does not toll the one-year). Petitioner also filed a petition to invoke all writs with the Florida Supreme Court on November 30, 2009. Resp. Ex. 35. However, because the Florida Supreme Court found it lacked jurisdiction to consider the all writs petition and dismissed it for lack of jurisdiction, see Resp. Ex. 36, it too failed to toll Petitioner's federal one-year statute of limitations.[4] See e.g., Davis v. Jones,

---

[3] Respondents erroneously state that the trial court denied Petitioner's Rule 3.850 motions on February 24, 2009. Resp. at 9. However, in Florida, "[a]n order is rendered when a signed, written order is filed with the clerk of the lower tribunal." Fla. R. App. P. 9.020(i). Here, a review of the trial court's docket reveals the order was filed with the clerk on March 10, 2009.

[4] Even assuming these untimely and improperly filed state petitions did toll Petitioner's federal one-year, the instant action would still be untimely filed.

5:15CV307/MMP/EMT, 2016 WL 6310585, at *4 n.4 (N.D. Fla. Sept. 26, 2016), report and recommendation adopted by the District Court on Oct. 26, 2016.

As such, Petitioner's one-year resumed on September 30, 2009, following the Fifth DCA's mandate affirming the trial court's denial of Petitioner's initial Rule 3.850 motions, and ran for another fifty-four days until it was again tolled on November 23, 2009, when Petitioner filed his second Rule 3.850 motion for postconviction relief. Resp. Ex. 39. The trial court denied Petitioner's second Rule 3.850 motion on June 4, 2010, and the Fifth DCA issued its mandate affirming the trial court's denial on September 8, 2010. Resp. Exs. 40-42. Petitioner's one-year resumed on September 9, 2010, and ran for another sixty-two days until it was tolled on November 10, 2010, when Petitioner filed his third Rule 3.850 motion. Resp. Ex. 43. On January 3, 2011, the trial court disposed of Petitioner's third Rule 3.850 motion by issuing an order prohibiting Petitioner from filing further pro se pleadings, and finding Petitioner repeatedly filed successive and otherwise meritless pro se motions that were wasting judicial resources. Resp. Ex. 46. The Fifth DCA issued a mandate affirming the trial court's order on January 11, 2012.[5] Resp. Exs. 50-51. Petitioner's federal one-year limitations period resumed the next day, and then expired eighty days later on April 2, 2012.[6] Petitioner initiated this action more than four years later.

---

[5] Because Respondents acknowledge Petitioner's third Rule 3.850 motion as a properly filed motion for tolling purposes; thus, the Court heeds Respondents' acknowledgment.

[6] The eightieth day was a Sunday; thus, Petitioner had until Monday, April 2, 2012, to file a federal habeas petition.

Petitioner filed three more state motions for collateral relief on December 18, 2014; November 6, 2016; and March 31, 2016. Resp. Exs. 52-61. Because there was no time left on the AEDPA one-year clock, however, these motions did not toll the federal one-year limitations period. See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating where a state prisoner files postconviction motions in state court after the AEDPA limitations period has expired, those filings cannot toll the limitations period because "once a deadline has expired, there is nothing left to toll"); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (per curiam) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like [the petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). As such, this Court finds the instant Petition is untimely filed.

Because the Petition is untimely, to proceed, Petitioner must show he is entitled to equitable tolling. "When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). The United States Supreme Court established a two-prong test for equitable tolling of the one-year limitations period, stating that a petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014) (recognizing equitable tolling is an extraordinary remedy "limited to rare and exceptional circumstances and typically applied sparingly"); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir.

2008)(per curiam) (noting the Eleventh Circuit "held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)).

Petitioner concedes that this action is untimely, but appears to claim that he is entitled to equitable tolling because the one-year statute of limitations is an unreasonable time constraint for a pro se litigant, and regular prison lockdowns prevented him from timely filing. See Reply at 20-25. He further avers that he is uneducated and deprived of adequate legal assistance. Id. Upon review of the record and considering Petitioner's extreme delay in filing the instant Petition, this Court finds Petitioner's argument unavailing.

> "[C]ircumstances warranting equitable tolling" do not include restricted access to a law library. Miller v. Florida, 307 Fed. Appx. 366, 368 (11th Cir. 2009) (citing Akins v. United States, 204 F.3d 1086, 1089-90 (11th Cir. 2000); see also Paulcin v. McDonough, 259 Fed. Appx. 211, 213 (11th Cir. 2007)("Paulcin's transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances."); Coleman v. Mosley, 2008 WL 2039483, at *3 (M.D. Ala. May 12, 2008)("Petitioner'[s] pro se status, ignorance of the law, limited law library access, and lack of legal assistance are insufficient grounds on which to toll the limitation period.").

Couch v. Talladega Circuit Courts, No. 1:11-cv-1737-JFG-MHH, 2013 WL 3356908, at *5 (N.D. Ala. July 3, 2013). The Court further finds that while lack of a formal education presents some challenges, it does not excuse Petitioner from complying with the time constraints for filing a federal petition. See Moore v. Bryant, No. 5:06cv150/RS/EMT, 2007 WL 788424, at *2-*3 (N.D. Fla. Feb. 12, 2007), report and recommendation adopted by the District Court on March 14, 2007. Indeed, Petitioner was obviously able to file numerous rational motions for collateral relief in state court since 2007. As such, under

7

these circumstances, the Court finds that Petitioner is not entitled to the rare remedy of equitable tolling.

Further, to the extent Petitioner relies on Martinez v. Ryan, 132 S. Ct. 1309 (2012) to excuse his untimely Petition, such reliance is misplaced. See Reply at 15. The holding in Martinez is inapplicable to this timeliness analysis. See Lambrix v. Sec'y, Fla. Dept. of Corr., 756 F.3d 1246, 1249 (11th Cir. 2014) (holding "cause and prejudice" standard of Martinez only applies to procedural default analysis and has no application to the operation or tolling of the § 2244(d) statute of limitations for filing a § 2254 petition).

Petitioner also asserts a claim of actual innocence to overcome the time bar. See Doc. 7 at 53. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence, a petitioner must "present new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and citations omitted); see Schlup v. Delo, 513 U.S. 298, 327 (1995) (finding that to make a showing of actual innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have found [the p]etitioner guilty beyond a reasonable doubt").

Petitioner raises four arguments in support of his actual innocence/miscarriage of justice assertion. See Reply at 7. First, Petitioner contends that he is actually innocent because the state constructively amended the Information and prosecuted Petitioner

under a principal theory. Doc. 7 at 6-9. According to Petitioner, the Information did not reference section 777.011, Florida Statutes,[7] and he did not know that the state was prosecuting him as a principal until the second day of trial. See Reply at 7-10. The state, however, was not required to specifically charge Petitioner as a principal to the offense before proceeding on a principal theory at trial. See Warren v. Sec'y Dept. of Corr., No. 6:14-cv-109-Orl-37TBA, 2015 WL 4620579, at *3 (M.D. Fla. July 31, 2015) (citing Hampton v. State, 336 So. 2d 378, 380 (Fla. 1st DCA 1976) ("[I]t has long been the law of this state that it is immaterial whether the indictment or information alleges the defendant committed the crime or was merely aiding and abetting in its commission, as long as the proof establishes that he was guilty of either one of acts prescribed by the statute."). Thus, this evidence does not establish actual innocence under Schlup.

Next, Petitioner contends that he is in receipt of two affidavits showing he did not participate in the crimes. See Reply at 10-11. The first affidavit Petitioner relies on is from codefendant Shannon Pettigrew that explains Petitioner never intended to participate in the carjacking and the kidnapping, but was driving the victim's vehicle because Pettigrew asked Petitioner to drive while they searched for more drugs.[8] See Doc. 7-4. According to Pettigrew, Petitioner was unaware that Pettigrew had robbed the victim, Timothy Welch, and "took [Welch] against his will" before Petitioner arrived and began driving Welch's vehicle. Id. Petitioner asserts that had this testimony been presented at trial, no reasonable jury would have convicted him. Reply at 12-13.

---

[7] Section 777.011, is Florida's statute on charging a defendant as a principal in the first degree. § 777.011, Fla. Stat.

[8] In the affidavit, Pettigrew refers the Petitioner as Robert Holland, which is Petitioner's alias. See Doc. 7-4.

9

Pettigrew's affidavit is similar to the false statements Petitioner made to law enforcement immediately after his arrest. Notably, during his initial interrogation, Petitioner told police that he did not know who owned the vehicle, he did not know how Pettigrew came into possession of the vehicle, and he was unaware that there was a third individual in the back seat. Resp. Ex. 6 at 345-50. At trial, Petitioner admitted he lied to officers during his initial interrogation, and instead testified that he, Pettigrew, and Welch voluntarily left a party together to buy more drugs from Welch's friend. See Resp. Ex. 6 at 321-28. Petitioner explained that after making the drug purchase, Welch asked Petitioner to drive his car while he smoked in the backseat. Id. Petitioner testified that he agreed to drive Welch's car and admitted that he then engaged in a high-speed car chase with a police officer who was trying to make a traffic stop. Id. at 328-30. Petitioner testified that he ran from police because he did not want to get caught with drugs. Id.

Considering Petitioner's conflicting stories, the Court finds that Pettigrew's proposed statements that he alone kidnapped Welch prior to encountering Petitioner would merely undermine Petitioner's credibility at trial. Petitioner lied to the police several times, and he acknowledged his fabrication at trial. He testified that he initially told police that he was entirely ignorant as to why Pettigrew was in the subject vehicle and even reported that he did not even know Welch was in the backseat of the car. That version was a lie, as Petitioner admitted at trial. A year after his interrogation, Petitioner reversed his lie and admitted that he knew Welch was in the car and attempted to explain away his previous lie by saying he, Welch, and Pettigrew were party pals simply driving around in hopes of purchasing drugs. Further, a review of the Florida Department of Corrections' Offender Network shows that Pettigrew was convicted of grand theft of a motor vehicle

10

and false imprisonment for his participation in these crimes. See Corrections Offender Network, Florida Department of Corrections, available at http://www.dc.state.fl.us/AppCommon/ (last visited Aug. 23, 2018). As such, the Court finds that Pettigrew's affidavit does not present new reliable evidence that demonstrates actual innocence. The Court is not convinced that in light of Pettigrew's affidavit, no reasonable jurist would have found Petitioner not guilty beyond a reasonable doubt.

The second affidavit Petitioner relies on is from Dallas Ford, a fellow inmate housed in Petitioner's correctional facility. See Doc. 7-5. Ford maintains that he was Welch's regular drug dealer, and that Welch contacted him to procure methamphetamine on the day of the incident. Id. According to Ford, he met Welch at a gas station and upon contact, Welch appeared happy and friendly with the two black males with whom he arrived. Id. Ford states that Welch conducted the drug transaction inside of Ford's vehicle and then happily returned to his vehicle before allowing one of his "smoke partners" to get into the driver's seat as Welch got into the backseat. Id. Ford contends that he does not personally know Petitioner, but was transferred to Petitioner's correctional facility in 2015 and recognized Petitioner as one of the individuals with Welch on the day of the drug transaction. Id.

The Court finds that Ford's affidavit does not amount to new reliable and exculpatory evidence under Schlup. Instead, Ford's affidavit is merely cumulative to Petitioner's trial testimony that he was amicably with Welch because they were purchasing drugs. See Resp. Ex. 6 at 321-30. The jury, however, rejected this version of events when it found Petitioner guilty. Ford's affidavit does not shed light on whether Welch's initial encounter with Petitioner was voluntary, but it simply confirms that

Petitioner was driving Welch's vehicle while Welch was in the car. As such, Petitioner has failed to show that in light of this evidence, it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt.

Finally, Petitioner appears to raise numerous claims of ineffective assistance of counsel in support of his claim of actual innocence. See Reply at 12-17. However, these assertions of ineffective assistance of counsel are not new reliable evidence demonstrating factual innocence under Schlup, but merely show a dissatisfaction with trial counsel's performance. Likewise, Petitioner's apparent claim that the prosecutor's improper opening and closing arguments demonstrate actual innocence does not amount to new reliable evidence of factual innocence. See Reply at 17-19. Instead, Petitioner is only expressing a disagreement with the state's prosecution of his case.

In sum, Petitioner has not offered any new reliable evidence that was not available at the time of trial. He has not produced exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available at the time of his trial. Indeed, he has failed to point to any evidence to demonstrate that it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt in light of new evidence. Accordingly, this is not an "extraordinary" case under the Schlup standard. The Petition is untimely filed and Petitioner has not shown an adequate reason why the dictates of the one-year limitations period should not be imposed upon him.

Accordingly, it is **ORDERED AND ADJUDGED**:

1. The Petition (Doc. 1) and the Amended Petition (Doc. 7) are **DISMISSED with prejudice**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3. If Petitioner appeals this Order, this Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of August, 2018.

_____
BRIAN J. DAVIS
United States District Judge

Jax-7

C: Michael Leon Hall, #169757
Pamela J. Koller, Esq.

---

[9] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.